UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WILLIE JEFFERSON, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 1:16-cv-00219-JAR |
| J. HUDGENS, et al., | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment. (Doc. 55.) Plaintiff opposes the motion. (Doc. 60.) Defendants replied. (Doc. 65.) Thereafter, the Court directed Defendants to respond to Plaintiff's allegations that Defendant had withheld discovery material. (Doc. 66.) Defendants did so. (Doc. 68.)

Plaintiff also filed a surreply and second surreply. (Docs. 69, 70.) Although both were filed without leave of court, the Court will consider them. *See, Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (explaining that pro se plaintiffs are held to a less-stringent standard for pleadings).

### Background

On October 5, 2015, while incarcerated at the Southeast Correctional Center in Charleston, Missouri, Plaintiff Willie Jefferson fractured his left foot playing softball. (Doc. 57 at ¶¶ 2-4; Doc. 61 at ¶¶ 2-3.) He was issued crutches and told not to put weight on his left foot, but he was not given a cast or boot. (Doc. 57 at ¶ 4; Doc. 61 at ¶ 3.) On October 21, 2015, Plaintiff was transferred to administrative segregation for possessing contraband. (Doc. 57 at

1

¶ 5; Doc. 61 at ¶ 4.) Pursuant to policy, his crutches were taken, and he was handcuffed. (Doc. 57 at ¶ 6; Doc. 61 at ¶ 6.)

Defendants state that, after a brief attempt at hopping on his right foot, Plaintiff stated that he could not transport himself to administrative segregation. (Doc. 57 at ¶ 9.) Defendants assert that they then employed "a carry technique"—which involved lifting Plaintiff under either arm—to allow Plaintiff to avoid placing any weight on his left foot. (*Id.* at ¶ 11; Doc. 57-1 at 22:2-3.) They state that Plaintiff never complained or asked for his crutches. (Doc. 57 at ¶ 8.)

Plaintiff asserts that Defendants forced him to hop a number of times despite telling them that he was in considerable pain. (Doc. 57 at ¶ 10.) Likewise, he states that he asked for his crutches and requested they wait for a medical cart before trying to transport him. (*Id.* at ¶ 7; Doc. 57-1 at 28:15-25.) In his deposition, Plaintiff described the "carry technique" as the Defendants lifting his arms as "high as they possibly can in the back" and dragging him. (Doc. 57-1 at 31:1-9.)

At some point, Defendants were joined by a third correctional officer, who lifted Plaintiff by the legs such that he was no longer in contact with the ground. (Doc. 57 at ¶ 14; Doc. 57-1 at 22:11-16.) Defendants assert that they "took multiple breaks in order to give Plaintiff sufficient time to rest his non-injured leg." (*Id.* at ¶ 13.) Defendants eventually discovered a motorized medical cart, which they used to transport Plaintiff the rest of the way. In total, Plaintiff was carried "approximately one city block." (Doc. 57 at ¶ 15; Doc. 57-1 at 22:11-16.)

Defendants also assert that, when they left Plaintiff in administrative segregation, they "were not aware of any specific medical condition" that Plaintiff might have been suffering and that they had no additional interactions with Plaintiff. (Doc. 57 at ¶¶ 18-19.) They assert that their attempts to transport Plaintiff were a good-faith effort to protect his left foot and to

2

transport him "as safely and carefully as was possible given the circumstances." (Doc. 57 at ¶¶ 20-21.)

In addition to his deposition testimony and statement of facts, Plaintiff provides medical records from the months following the transfer. (Doc. 60-2.) A month after the transfer, Plaintiff was diagnosed with a "small cortical avulsion near insertion of the peroneus brevis tendon" on the outside of his broken left foot, and was prescribed Ibuprofen. (Doc. 60-2 at 1.) Although the medical record notes the transfer in Plaintiff's medical history, there is no indication that the transfer caused or exacerbated Plaintiff's condition. (*Id.*) An X-ray was ordered, and Plaintiff was told to "avoid high impact and exercises that cause pain." (*Id.*) In December, Plaintiff was fitted with a walking boot and excused from work detail through February. (*See* Doc. 60-3 at 1-3.)

On August 15, 2016, Plaintiff filed suit alleging that Defendants had been deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. (Doc. 1.) He blames Defendants for ongoing pain and delayed healing. (*Id.*) Defendants move for summary judgment, arguing that they were aware of Plaintiff's injury and acted in good faith to accommodate him. (Doc. 56 at 3.) In addition, they argue that they are entitled to qualified immunity. (*Id.* at 9.)

**Legal Standards**

Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment only if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). In ruling on a motion for summary judgment, all

3

reasonable inferences must be drawn in a light most favorable to the non-moving party. *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005). The evidence is not weighed and no credibility determinations are made. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

The moving party's burden is to identify record evidence that demonstrates the absence of material fact. *Celotex*, 477 U.S. at 323. It need not provide proof negating the nonmovant's claim. *Id.* Once the moving party demonstrates that there is no genuine issue of material fact, the nonmovant must do more than show there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A plaintiff may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." *Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005); *see also, Conolly v. Clark*, 457 F.3d 872, 876 (8th Cir. 2006). Instead, the nonmoving party bears the burden of setting forth affirmative evidence and specific facts showing a genuine factual dispute that must be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex*, 477 U.S. at 324. "A dispute about a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Herring v. Canada Life Assur. Co.*, 207 F.3d 1026, 1030 (8th Cir. 2000) (quoting *Anderson*, 477 U.S. at 248). Judgment as a matter of law is appropriate only when "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party." Fed. R. Civ. P. 50(a).

Deliberate indifference to a serious medical need constitutes the "unnecessary and wanton infliction of pain" and is therefore prohibited by the Eighth Amendment's bar against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "[I]ntentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed" is sufficient, but not "every claim

4

by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 104-105. There are objective and subjective elements to a deliberate-indifference claim. "The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)).

Even if an inmate can show deliberate indifference, government actors are entitled to qualified immunity when they can show that their conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Treats v. Morgan*, 308 F.3d 868, 871 (8th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Courts ask two questions when resolving a government official's qualified-immunity claim: "[Do] the facts, taken in a light most favorable to the party alleging an injury, show a violation of a constitutional or statutory right?" and, if so, was that right "so clearly established that it would have been 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted?'" *Id.* at 871-72 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). If the answer to either question is "No," the defendant is entitled to qualified immunity.

## Analysis

Defendants first argue that they are entitled to judgment as a matter of law on Plaintiff's Eighth Amendment deliberate-indifference claim.[1] (Doc. 56 at 3.) They concede that Plaintiff's foot injury may have been "objectively serious," but they assert that they did not deliberately disregard his needs. Plaintiff's specific medical need, as determined by medical staff, was to avoid bearing weight on his left foot. Defendants each provide a sworn affidavit asserting that

---

[1] To the extent Plaintiff's arguments in opposition to summary judgment refer to excessive force, failure to treat, or conditions of confinement, they are not properly before the Court. (*See* Doc. 5 (dismissing all of Plaintiff's claims except his deliberate-indifference claim against Defendants).)

they used a "carry technique" to ensure that Plaintiff only bore weight on his right foot. (*See* Doc. 57 at 3.) They further state that they expressly directed Plaintiff not to bear weigh on his injured foot, that they provided Plaintiff numerous rest breaks, and that, eventually, a third guard arrived to assist them in transporting Plaintiff entirely off the ground. (*Id.*)

Plaintiff responds with an affidavit and medical records. (Docs. 60 to 60-5.) As an initial matter, Plaintiff's own, self-serving affidavit is insufficient to overcome Defendant's motion. *See Davidson & Assocs.*, 422 F.3d at 638. Plaintiff asserts that there is a video that would corroborate his assertions (Doc. 61 at 2), but there is no video in the record and Plaintiff offers no evidence that a video exists beyond his assertion.[2] Second, Plaintiff's medical records do not support his claim of deliberate indifference. At most, they show that Plaintiff's left foot was injured and that he was given crutches and told not to bear weight—all before the transfer— and that his left foot had not healed several weeks after the transfer. (Doc. 60-2 at 1-4.) Defendants do not dispute Plaintiff's injury, diagnosis, or prescription, so his pre-transfer records are of little help. To the extent Plaintiff proffers medical records to show that the transport exacerbated his injury or otherwise caused long-term effects to the healing of his foot (*see* Doc. 68 at 5), nothing in the medical professionals' suggests a causal link.

In addition to failing to proffer sufficient evidence to demonstrate a genuine issue of material fact, Plaintiff's allegations, even when viewed in the most favorable light, do not rise to the level of an Eighth Amendment violation. First of all, corrections officers are not required by the Eighth Amendment to deviate from security policy. *Turner v. Mull*, 784 F.3d 485, 490 (8th Cir. 2015). Thus, transferring Plaintiff in handcuffs and without his crutches was not inappropriate. Second, the alleged deprivation must be "sufficiently serious" to support a

---

[2] Plaintiff asserts that Defendants improperly withheld discovery (Doc. 67), but Defendants represent that they have fully responded to all of Plaintiff's discovery requests and produced all discoverable material sought by Plaintiff (Doc. 68).

constitutional violation. (*Id.*) Even if Plaintiff intermittently bore weight on his injured foot while being transported one city block, the deprivation appears to be minor. *Turner v. Mull*, 784 F.3d 485, 491 (8th Cir. 2015) (collecting cases applying the de minimus standard in the conditions-of-confinement context). While the "unnecessary and wanton infliction of pain" caused by deliberate indifference might suffice, the record indicates that Defendants made a good-faith attempt to minimize—and, eventually, entirely eliminate—the risk of pain caused by Plaintiff bearing weight on his left foot. Moreover, because Plaintiff cannot establish a causal link between the method of transport and any long-term effects, any deprivation was short-lived and temporary. *See id.* (noting "the relative brevity" of the plaintiff's discomfort).

Finally, the Court concludes that Defendants are entitled to qualified immunity. As noted above, Plaintiff fails to show that Defendants violated his constitutional rights. Qualified immunity is therefore appropriate. *Treats*, 308 F.3d at 871. Moreover, "an official is protected by qualified immunity so long as 'their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000) (quoting *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). Defendants' actions indicate an affirmative attempt to meet their constitutional obligations. Accordingly, they are shielded by qualified immunity.

## Conclusion

For the reasons stated, the Court concludes that Defendants are entitled to summary judgment on Plaintiff's deliberate-indifference claim and their qualified-immunity defense.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc. 55), is **GRANTED.**

A separate judgment will accompany this order.

7

Dated this 28th day of March, 2019..

                                         */s/ John A. Ross*
                                         JOHN A. ROSS
                                         UNITED STATES DISTRICT JUDGE